T.C. Memo. 2019-72

UNITED STATES TAX COURT

GREGORY L. MURPHY AND MONICA J. MURPHY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12489-18L.                    Filed June 11, 2019.

Gregory L. Murphy and Monica J. Murphy, pro sese.

Ryan Z. Sarazin and Bartholomew Cirenza, for respondent.

MEMORANDUM OPINION

LAUBER, Judge: In this collection due process (CDP) case, petitioners

seek review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure. We round all monetary amounts to the nearest dollar.

**[*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy. The IRS initiated the collection action with respect to petitioners' Federal income tax liability for 2015. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law.

Petitioners urge that the settlement officer (SO) erred in declining to offset, against their 2015 tax liability, a credit that would exist in their 2011 account if the IRS had not denied their claim for refund for 2011. Concluding as we do that we lack jurisdiction to decide a disputed refund claim for a year not before us, we will grant respondent's motion and sustain the collection action for 2015.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits. See Rule 121(b). Petitioners resided in Virginia when they filed their petition.

Petitioners filed a return for 2015 but failed to pay in full the tax shown as due. The IRS assessed the resulting liability, which petitioners did not pay upon notice and demand for payment. On August 28, 2017, in an effort to collect this unpaid liability, the IRS issued them a Letter 11, Notice of Intent to Levy and

[*3] Notice of Your Right to a Hearing. As of the date of that notice, petitioners' outstanding liability for 2015 was $14,602.[2]

The levy notice informed petitioners that, if they wished to request a CDP hearing, they needed to complete and submit, on or before September 27, 2017, a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioners completed Form 12153 and sent it to the IRS accompanied by a cover letter. The Form 12153 and cover letter were not marked as received by the IRS until January 19, 2018, but the cover letter bore a certified mail receipt and a September 27, 2017, postmark affixed by the U.S. Postal Service. Respondent concedes that petitioners' hearing request was timely mailed and thus timely filed. See sec. 7502; sec. 301.6330-1(c)(2), Q&A-C1, C3, C4, Proced. & Admin. Regs.

In their hearing request petitioners alleged no inability to pay and expressed no interest in a collection alternative. Nor did they dispute that their 2015 return showed an underpayment of tax. Rather, they asserted that they were entitled to a

---

[2]Petitioners attached to their response to the summary judgment motion a copy of a November 2018 letter to the IRS stating that they had enclosed a check for $10,657 to cover their 2015 liability. Petitioners have not supplied a copy of the check or otherwise shown that an actual payment was made. In any event a check in that amount would not have covered their balance due for 2015, which was $14,602 when the levy notice was issued. Petitioners have not moved to dismiss this case on mootness grounds, as would be possible if their 2015 liability had actually been paid in full. See Greene-Thapedi v. Commissioner, 126 T.C. 1, 7 (2006).

[*4] refund for 2011 and that such a refund, if credited to their 2011 account, could be carried to 2015 to offset their 2015 tax liability.

After receiving petitioner's case an SO from the Holtsville, New York, Appeals Office confirmed that the 2015 liability had been properly assessed and that all other requirements of applicable law and administrative procedure had been met. The SO believed that petitioners' hearing request was untimely and hence that they were not entitled to a CDP hearing. The SO therefore offered them an "equivalent hearing."[3]

The SO sent petitioners a letter acknowledging receipt of their hearing request and scheduling a telephone conference. At their request the hearing was rescheduled and held on April 9, 2018. During the conference petitioners again stated that they wished to address their alleged entitlement to a refund for 2011.

For 2011 petitioners had failed to file a return. The IRS had accordingly prepared a substitute for return (SFR) on the basis of third-party information reports. See sec. 6020(b). On May 26, 2014, the IRS issued to petitioners a notice

_____

[3]An equivalent hearing resembles a CDP hearing in that it is held with the IRS Appeals Office, the SO considers the same issues that would have been considered at a CDP hearing, and the SO generally follows the same procedures. See Craig v. Commissioner, 119 T.C. 252, 258 (2002). The chief difference is that the SO's decision following an equivalent hearing is embodied in a "decision letter" as opposed to a "notice of determination." Ibid.

**[\*5]** of deficiency for 2011 based on the SFR.  They did not seek review in this Court, so the IRS assessed the tax as determined in the notice of deficiency.

In preparing the SFR for 2011 the IRS had relied in part on a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued to petitioners by MetLife.  Petitioners believe that this Form 1099-R was erroneous.  In April 2015, in an effort to rectify this supposed error, they submitted to the IRS an SFR reconsideration request, which the IRS denied.  On May 7, 2016, they submitted an amended return for 2011, which the IRS treated as a claim for refund and likewise denied.

During the April 9, 2018, hearing the SO explained that petitioners' liability for 2011 was not the subject of the levy notice and that she lacked jurisdiction to address their disputed refund claim.  She expressed willingness to consider a collection alternative, but petitioners declined that invitation.

On May 21, 2018, the IRS issued petitioners a decision letter sustaining the levy, and they timely petitioned this Court for review.  Petitioners contend that: (1) their CDP hearing request was timely, (2) the SO erred in determining that they did not dispute their underlying liability for 2015, and (3) the SO abused her discretion in failing to consider the impact on their 2015 liability of their 2011 claim

[*6] for refund. On February 14, 2019, respondent filed a motion for summary judgment, to which petitioners timely responded.

## Discussion

### A.    Jurisdiction

The Tax Court is a court of limited jurisdiction, and we must first ascertain whether the case before us is one that Congress has authorized us to consider. Sec. 7442; Estate of Young v. Commissioner, 81 T.C. 879, 881 (1983). In a CDP case such as this, our jurisdiction depends on the issuance of a notice of determination following a timely request for a CDP hearing and the filing of a timely petition for review. Sec. 6330(d)(1); Orum v. Commissioner, 123 T.C. 1, 8, 11-12 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

A decision letter ordinarily does not constitute a "determination" within the meaning of section 6330(d), and we normally lack jurisdiction to consider a taxpayer's challenge to the outcome of an equivalent hearing. See Kennedy v. Commissioner, 116 T.C. 255, 263 (2001). However, if the taxpayer has made a timely request for a CDP hearing, and if the Appeals Office incorrectly offers the taxpayer an equivalent hearing instead, we have jurisdiction to consider a timely request for review. Craig v. Commissioner, 119 T.C. 252, 259 (2002). In such circum-

**[*7]** stances, we treat "the 'decision' reflected in the decision letter * * * [as] a 'determination' for purposes of section 6330(d)(1)." Ibid.

Respondent does not dispute the timeliness of petitioners' request for a CDP hearing. We conclude that the SO's decision to sustain the collection action reflected in the decision letter is a "determination" for purposes of section 6330(d) and that we have jurisdiction to adjudicate this case. See Craig, 119 T.C. at 259.

B.     Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b), we may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Ibid. However, the nonmoving party may not rest upon the mere allegations or denials in his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. Finding no material facts to be in dispute, we conclude that this case may be adjudicated summarily.

**[\*8]** C.       <u>Standard of Review</u>

Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS determination for abuse of discretion only. <u>Id.</u> at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

Petitioners did not dispute, during the hearing or in their petition, the tax liability that the IRS determined for their taxable year 2015. Rather, they contend that the SO erred in refusing to apply, against that 2015 liability, a supposed credit balance that they believe should be available for carryforward from 2011. There is some uncertainty in our precedents as to whether a de novo or an abuse-of-discretion standard of review applies in a situation such as this.[4] As we explain below,

_____

[4]In <u>Landry v. Commissioner</u>, 116 T.C. 60 (2001), we applied a de novo standard of review where the taxpayer challenged the IRS' failure to apply an overpayment credit from another year. We concluded that this was a challenge to the taxpayer's underlying tax liability, i.e., "the amount unpaid after application of credits to which * * * [the taxpayer was] entitled." <u>Id.</u> at 62. On the other hand, we have applied abuse-of-discretion review when considering challenges to the IRS' application of a check or other tax payment. <u>See</u> <u>Melasky v. Commissioner</u>, 151 T.C. __ (Oct. 10, 2018) (Holmes, J.) (holding that a dispute as to whether a

(continued...)

**[*9]** we conclude that the SO answered correctly the credit carryforward question that petitioners raise. Because we would sustain her resolution of this issue under either standard of review, we need not decide which applies. See Dixon v. Commissioner, 141 T.C. 173, 184 & n.6 (2013); Estate of Adell v. Commissioner, T.C. Memo. 2014-89, 107 T.C.M. (CCH) 1463, 1466; Golub v. Commissioner, T.C. Memo. 2013-196, 106 T.C.M. (CCH) 173, 174-175. With regard to matters other than application of the claim for an overpayment credit from 2011, we will review the SO's action for abuse of discretion.

D.     Analysis

    1.     Overpayment Credit from 2011

Our jurisdiction in CDP cases generally does not permit us to consider matters involved for nondetermination years, that is, for tax years that are not a subject of the collection action before us. But we may consider facts and issues from other years to the extent they "are relevant in evaluating a claim that an unpaid tax has been paid." Freije v. Commissioner, 125 T.C. 14, 27 (2005). An available credit from another year is a fact that may affect the taxpayer's correct liability for

---

[4](...continued)
payment was properly credited to the taxpayer's account for a particular tax year is not a challenge to his underlying tax liability); see also Orian v. Commissioner, T.C. Memo. 2010-234, 100 T.C.M. (CCH) 356, 359; Kovacevich v. Commissioner, T.C. Memo. 2009-160, 98 T.C.M. (CCH) 1, 4 & n.10.

[*10] the year that is the subject of the collection action. Weber v. Commissioner, 138 T.C. 348, 371-372 (2012). But a credit must actually exist in order to constitute an "available credit." A mere claim for a credit "is not an 'available credit,'" and such a claim "need not be resolved before the IRS can proceed with collection of the liability at issue." Id. at 372; see Del-Co W. v. Commissioner, T.C. Memo. 2015-142, 110 T.C.M. (CCH) 119, 120-121.

At the time of petitioners' hearing, the IRS had already denied the refund claim embodied in their amended 2011 return. Thus, far from having an "available credit" for 2011, petitioners had nothing more than a disagreement concerning the denial of that claim. The SO was not required to consider the merits of the position taken on petitioners' 2011 amended return when determining whether to sustain the proposed collection action for 2015. See Precision Prosthetic v. Commissioner, T.C. Memo. 2013-110; Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143.

We likewise lack jurisdiction to address that question. We may consider "whether a credit available from another tax year should be applied to the taxpayer's liability for the year before the Court" only if that other credit "indisputably exists." Del-Co W., 110 T.C.M. (CCH) at 120. Petitioners do not have an "available credit" from 2011, and we lack jurisdiction to decide their disputed claim for

**[*11]** refund for a year that is not before us. See Weber, 138 T.C. at 366. Whether we review the SO's action under a de novo or an abuse-of-discretion standard, we sustain her determination that petitioners did not advance a proper challenge to their underlying tax liability for 2015 because their challenge was based on a credit that does not exist.

2.    Other Issues

In deciding whether the SO abused her discretion in any other respect, we consider whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure had been met, (2) considered any relevant issues petitioners raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Our review of the record establishes that the SO properly discharged all of her responsibilities under section 6330(c).  She verified that petitioners' tax liability for 2015 had been properly assessed, and she correctly determined that they had no "available credit" to offset against that liability.  Petitioners had the opportunity to submit a collection alternative in the form of an installment agreement or offer-in-compromise, but they did not avail themselves of that opportunity.  See

[*12] <u>Cavazos v. Commissioner</u>, T.C. Memo. 2008-257, 96 T.C.M. (CCH) 341, 344 ("It is not an abuse of discretion for an appeals officer to sustain a levy and not consider any collection alternatives when the taxpayer has proposed none.").

The gist of petitioners' position in this case is that the IRS erred in denying their claim for refund for 2011. The remedy for that supposed wrong was not to urge carryforward of a nonexisting credit in the CDP proceeding involving their 2015 tax year. The proper remedy would have been to file, in the appropriate U.S. District Court or the U.S. Court of Federal Claims, a refund suit seeking recovery of the allegedly overpaid 2011 tax. <u>See</u> sec. 7422 (governing civil actions for refund). Finding no abuse of discretion in the SO's handling of this issue, we will grant summary judgment for respondent and sustain the proposed collection action.

To implement the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.
