T.C. Memo. 2015-225

UNITED STATES TAX COURT

FRANK D. MATHEWS, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16899-14L.                    Filed November 23, 2015.

<u>John L. Lentell</u>, for petitioner.

<u>Shaina E. Boatwright</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before us on respondent's motion for partial

summary judgment that we have recharacterized as respondent's motion for

summary judgment (respondent's motion).[1]  We shall grant respondent's motion.

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure.
All section references are to the Internal Revenue Code in effect at all relevant
(continued...)

[*2]                              Background

The record establishes and/or the parties do not dispute the following.

Petitioner resided in Missouri at the time he filed the petition.

Petitioner filed late a Federal income tax (tax) return for each of his taxable years 2000, 2004, 2005, 2006, 2007, 2008, 2009, and 2011.  Petitioner did not pay the tax shown due in each of those returns.

Respondent assessed on various dates tax and certain additions to tax, as well as interest as provided by law, for each of petitioner's taxable years 2000, 2004, 2005, 2006, 2007, 2008, 2009 and 2011.  (We shall refer to the respective amounts of unpaid tax, additions to tax, and interest that respondent assessed for each of petitioner's taxable years 2000, 2004, 2005, 2006, 2007, 2008, 2009, and

---

[1](...continued)
times.

In respondent's motion, respondent states that "respondent's notice of determination does not address the validity of petitioner's Notice of Intent to Levy.  Upon disposition of this motion, respondent intends to file a motion to remand for a hearing on the levy."  The notice of determination concerning collection action(s) under section 6320 and/or 6330 of the Internal Revenue Code (notice of determination) which respondent issued to petitioner and upon which this case is based addresses only the "notice of Federal tax lien filing and your right to a hearing under IRC 6320" that respondent issued to petitioner with respect to his taxable years 2000, 2004, 2005, 2006, 2007, 2008, 2009, and 2011 (notice of tax lien).  As a result, the notice of tax lien is the only matter that we have the authority to, and that we shall, consider in this case.

[*3] 2011, as well as interest as provided by law accrued after the respective dates

of assessment, as unpaid liabilities at issue.)

On April 2, 2013, respondent issued to petitioner the notice of tax lien.

On May 9, 2013, petitioner's representative submitted to respondent Form

12153, Request for a Collection Due Process or Equivalent Hearing (May 9, 2013

Form 12153).[2]  In that form, petitioner's representative indicated that petitioner

disagreed with the notice of tax lien.[3]  In support of that disagreement, petitioner's

representative indicated in the May 9, 2013 Form 12153 that petitioner (1) wanted

---

[2]On May 9, 2013, petitioner's representative sent to respondent's Appeals Office (Appeals Office) Form 2848, Power of Attorney and Declaration of Representative, authorizing him to represent petitioner with respect to petitioner's taxable years 2000, 2004, 2005, 2006, 2007, 2008, 2009, and 2011.

[3]In the May 9, 2013 Form 12153, petitioner's representative indicated petitioner's disagreement with not only the notice of tax lien that respondent issued to petitioner but also a "Proposed Levy or Actual Levy".  Petitioner's representative filed the May 9, 2013 Form 12153 before respondent issued to petitioner on May 20, 2013, a notice of intent to levy and notice of your right to a hearing with respect to petitioner's taxable years 2004, 2005, 2006, 2007, 2008, 2009, and 2011 (notice of intent to levy).  On June 19, 2013, petitioner filed another Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which petitioner's representative indicated petitioner's disagreement with not only the notice of tax lien that respondent issued to petitioner but also a "Proposed Levy or Actual Levy".  The notice of determination on which this case is based does not address the notice of intent to levy.  It addresses only the notice of tax lien. See supra note 1.

[*4] an offer-in-compromise, (2) was unable to pay his unpaid liabilities at issue, (3) wanted a "withdrawal" of the lien, (4) claimed that the "[l]ien applied to property that * * * [he] did not own", (5) claimed that "[r]easonable expenses exceed income * * * [and that] [i]ncome earned is from social security and disability that should not be apportioned as income", and (6) wanted "to propose an alternative method of payment."

In a letter dated June 4, 2013, a representative of respondent acknowledged receipt of the May 9, 2013 Form 12153 and requested petitioner to complete and submit to respondent by June 19, 2013, Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals (Form 433-A). Petitioner did not comply with that request.

In a letter dated August 7, 2013, a representative of the Appeals Office (first settlement officer) requested that petitioner complete and submit to the Appeals Office Form 433-A. Petitioner did not comply with that request.

On November 26, 2013, the first settlement officer held a telephonic hearing with petitioner's representative. During that hearing, petitioner's representative indicated that most of petitioner's income consisted of monthly payments that the

**[\*5]** U.S. Department of Veterans Affairs made to him.[4]  (We shall refer to the monthly payments that the U.S. Department of Veterans Affairs made to petitioner as petitioner's monthly veteran disability benefits.)

On February 13, 2014, petitioner's representative sent by facsimile to the Appeals Office a statement (petitioner's financial statement) that contained the following information regarding the amounts that petitioner received each month:

| Receipt | Amount |
|---|---|
| Social Security disability | [1]$228.75 |
| IBEW disability[2] | 700.00 |
| NEBF pension[3] | 400.00 |
| Total[4] | 1,328.75 |

[1]Petitioner's financial statement indicated that "Mr. Mathews receives a monthly payment of $1,525.00 in Social Security Disability benefits.  The $228.75 listed above represents the 15% levy."
[2]The record does not explain what "IBEW" is.
[3]The record does not explain what "NEBF" is.

[4]Petitioner's financial statement indicated that "Mr. Mathews also receives $3,309.00 in VA Disability payments, but these are not included in the above and are not subject to levy under 26 USC § 6334."

Petitioner's financial statement contained the following information regarding the expenditures that petitioner made each month:

[4]The U.S. Department of Veterans Affairs made monthly payments to petitioner as a result of a finding by that Department that petitioner suffered from an illness relating to his service in the U.S. Armed Forces.

| [*6] Expenditure | Amount |
|---|---|
| Food, clothing, misc. | $697.00 |
| Housing and utilities[1] | 791.08 |
| Transportation[2] | 770.00 |
| Health care[3] | 551.00 |
| Taxes | 200.00 |
| Total | 3,009.08 |

[1]Petitioner's financial statement indicated that "Housing" expenditures were for "Wells Fargo Mortgage" and that "Utilities" expenditures were for "Johnson County Wastewater", "Kansas Gas Service", "Trash Service", "Phone", "Kansas City Power & Light", "Water One", and "Cable".

[2]Petitioner's financial statement indicated that "Transportation" expenditures were for "Transportation Operating" and "Car #1 Additional".

[3]Petitioner's financial statement indicated that "Health Care" expenditures were for "Health Insurance" and "Other Health Care".

On February 18, 2014, the first settlement officer determined that petitioner's monthly income was $5,934 and that his monthly allowable expenses were $2,691. As a result, the first settlement officer determined that petitioner had the ability to pay each month to the Internal Revenue Service (IRS) the difference between his monthly income and his monthly allowable expenses, or $3,243, with respect to the unpaid liabilities at issue.

On February 28, 2014, the Appeals Office assigned a different settlement officer (second settlement officer) to consider petitioner's May 9, 2013 Form

[*7] 12153. On March 14, 2014, the second settlement officer determined, as had the first settlement officer, that petitioner's monthly income was $5,934. However, unlike the first settlement officer, who had determined that petitioner's monthly allowable expenses were $2,691, the second settlement officer determined that petitioner's monthly allowable expenses were $4,540. As a result, the second settlement officer determined that petitioner had the ability to pay each month to the IRS the difference between his monthly income and his monthly allowable expenses, or $1,397,[5] with respect to the unpaid liabilities at issue.

On March 19, 2014, the second settlement officer mailed petitioner's representative a letter that stated in pertinent part:

> I have reviewed the financial information you provided to the prior [first] Settlement Officer and find you have the ability to pay of [sic] $1,397 a month. However, you qualify for an installment agreement under the Fresh Start program at $1,232. If you are interested in an installment agreement at that amount please contact me prior to the scheduled hearing date and I will send you agreement documents to sign.

---

[5]The second settlement officer apparently made a mathematical error when he subtracted petitioner's monthly allowable expenses of $4,540 from his monthly income of $5,934. That settlement officer arrived at an erroneous balance of $1,397, instead of the correct balance of $1,394. For convenience and to avoid confusion, we refer herein to the erroneous balance of $1,397, since many of the documents in the record refer to that erroneous balance.

**[*8]** On April 17, 2014, the second settlement officer telephoned petitioner's representative and conducted a hearing during which they discussed the second settlement officer's determination that petitioner had the ability to pay each month to the IRS $1,397 with respect to the unpaid liabilities at issue. During that telephonic hearing, petitioner's representative told the second settlement officer that he believed the second settlement officer had improperly included petitioner's monthly veteran disability benefits in his determination of the amount that petitioner had the ability to pay each month to the IRS with respect to the unpaid liabilities at issue.

On May 5, 2014, petitioner's representative sent by facsimile to the second settlement officer a letter that stated in pertinent part:

> As part of the agreed upon follow-up from our telephone conference of April 17, I am transmitting to you the following information:
>
> 1. IRS general publication of Information for Veterans with Disabilities,
> 2. Appeals Settlement Guidelines - Military Disability Retirement Benefits, and
> 3. 38 U.S. Code § 5301.
>
> From our perspective, two very important points are highlighted in these publications: 1) the veteran's disability benefits received by Mr. Mathews are non-taxable and should not be included in gross income, and 2) this exclusion extends to the calculation of household income for purposes of income available for any claimed collection procedures.

[*9]  On May 9, 2014, the second settlement officer began to research the information provided by petitioner's representative.  He made the following pertinent entries in his "Case Activity Records":

> Research 38 US Code 5301.  Search IRM 5.15 for veterans benefits, household income, non-taxable income.  I was unable to find anything that specifically states the income should be reported on the F 433-A.

> *         *         *         *         *         *         *

> * * * Email to Mark Miller IRS area counsel.  I told him what I researched and asked if he could refer me to something that says the income should be reported on the F 433-A.

> *         *         *         *         *         *         *

> Call from Mark Miller.  He told me he was not able to find anything that specifically states a taxpayer must include on his Form 433-A Collection Information Statement exempt income.  However, it is his opinion exempt income must be included in any calculation of a taxpayer's ability to pay.  The taxpayer has the income to live on.  I said I would like to tell the representative that I spoke to IRS Area Counsel and they confirmed exempt income must be included on the Form 433-A Collection Information Statement.  He said I can mention his opinion because he is confident it will stand up in court.

On May 21, 2014, the second settlement officer telephoned petitioner's representative, who was not available.  In a voice mail message that the second settlement officer left for petitioner's representative, the second settlement officer indicated that he had correctly included petitioner's monthly veteran disability

[*10] benefits in his determination of the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue. In that voice mail message, the second settlement officer also recommended that petitioner enter into an installment agreement.

By letter dated June 16, 2014, the second settlement officer informed petitioner of his conclusions and enclosed with that letter certain forms, including Form 433-D, Installment Agreement (Form 433-D).[6] That letter stated:

> I am writing regarding your collection due process hearing with Appeals. My last contact with your representative was on May 21, 2014, when I left him a voicemail.
>
> In the message I explained to your representative that tax-exempt veteran's benefits must be included in income reported on your Form 433-A Collection Information Statement to determine your ability to pay the IRS. Your representative provided a copy of 38 Code 5301 to show why he believes tax-exempt veterans benefits should not be included with income reported on your Form 433-A Collection Information Statement. I also researched IRM 5.15. I have shared this information with IRS counsel and they have responded. While counsel was not able to find anything in writing that specifically states tax exempt income should be included in the calculation to determine the taxpayer's ability to pay, they concur with me that it should be. I had asked your representative to contact me by May 22, 2014, and let me know if you're willing to enter into an installment agreement.

---

[6]The second settlement officer sent to petitioner's representative a copy of his letter dated June 18, 2014, and copies of the enclosures that he had sent to petitioner with that letter.

**[*11]** I recommend you enter into an installment agreement to prevent enforced collection action. Your collection information as provided shows you have an ability to pay of $1,397. However, when the allowable expense amounts are adjusted to reflect allowable national standards you show an ability to pay of $3,243.

You qualify for a Fresh Start installment agreement at $1,750 a month, the smallest payment to pay by the collection statute.

I have enclosed a Form 433-D Installment Agreement for you to sign and date. I have also enclosed a Form 12257 Waiver of Right to Judicial Review. Be sure to sign and date, then, return them in the enclosed envelope. Please return by June 27, 2014. If you do not return the Form 433-D by June 27, 2014, I will assume you are not willing to enter into an Installment Agreement.

Petitioner did not complete and submit Form 433-D to the Appeals Office, as the second settlement officer had requested in his letter to petitioner dated June 16, 2014.

On July 14, 2014, the Appeals Office issued to petitioner the notice of determination. The notice of determination stated in pertinent part: "The Notice of Federal Tax Lien is sustained. A proposed installment agreement was reached, and a signed Form 433-D Installment Agreement was requested. A signed agreement was required to confirm the taxpayer willing to accept the proposed terms. The installment agreement was never returned." An attachment to the notice of determination stated in pertinent part:

**[\*12]** ## SUMMARY AND RECOMMENDATION

The taxpayer submitted a "Request for a Collection Due Process Hearing" in response to a Notice of Federal Tax Lien dated on April 2, 2013, by the Automated Collection System (ACS). The notice reflects an unpaid personal income tax liability for the years listed above [2000, 2004 through 2009, and 2011]. Taxpayer's [May 9, 2013] Form 12153, Request for Collection Due Process Hearing, was received May 9, 2014 [sic]. The appeal request was timely.

The Notice of Federal Tax Lien is sustained. Taxpayer has failed to pursue a viable collection alternative. A proposed installment agreement was reached, and a signed Form 433-D Installment Agreement was requested. A signed agreement to be submitted by June 27, 2014, was required to confirm the taxpayer willing to accept the proposed terms. The installment agreement was never returned and no payments have been made, therefore no agreement exists.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

## DISCUSSION AND ANALYSIS

**Verification of legal and procedural requirements:**
Appeals has obtained verification from the IRS office collecting the tax that the requirements of any applicable law, regulation or administrative procedure with respect to the proposed levy or NFTL filing have been met. Computer records indicate that the notice and demand, notice of intent to levy and/or notice of federal tax lien filing, and notice of a right to a Collection Due Process hearing were issued.

Assessment was properly made per IRC § 6201 for each tax and period listed on the CDP notice.

The notice and demand for payment letter was mailed to the taxpayer's last known address, within 60 days of the assessment, as required by IRC § 6303.

[*13] There was a balance due when the CDP levy notice was issued or when the NFTL filing was requested.

**Prior involvement:**
The assigned settlement officers have had no prior involvement with respect to the specific tax periods either in Appeals or Compliance.

**Collection statute verification:**
The collection statute has been suspended; the collection period allowed by statute to collect these taxes has been suspended by the appropriate computer codes for the tax periods at issue.

Collection followed all legal and procedural requirements and the actions taken or proposed were appropriate under the circumstances.

### Issues raised by the taxpayer

**Taxpayer requested the NFTL be withdrawn**
Taxpayer requested the NFTL be withdrawn by checking the appropriate box on Form 12153. Appeals considered whether any of the criteria for allowing withdrawal of the lien existed in your case:

IRC § 6323(j) allows the withdrawal of a filed notice of lien without full payment and without prejudice under the following conditions:

* The filing of the notice of lien was premature or otherwise not in accordance with administrative procedures of the Internal Revenue Service;
* The taxpayer had entered into an agreement under IRC § 6159 to satisfy the tax liability for which the lien was imposed by means of installment payments, unless such agreement provides otherwise;
* Withdrawal of the lien will facilitate collection of the tax liability; or
* Withdrawal of the lien would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States. Similar to the above provision, each set of circumstances should be analyzed to determine if this condition exists.

**[*14] Collection Alternatives Offered by Taxpayer**
Taxpayer requested the collection alternative of an Installment Agreement or an Offer in Compromise by checking the appropriate boxes on the Form 12153.

**Challenges to the Existence of Amount of Liability**
Taxpayer did not dispute his liability.

**Taxpayer raised no other issues.**

**Balancing of need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary.**

Appeals considered whether the collection action balances the need for the efficient collection of the taxes with legitimate concerns taxpayer may have that any collection action is no more intrusive than necessary. As taxpayer did agree to the proposed collection alternative, and no other alternative was pursued within the hearing process, Appeals determined that the Notice of Federal Tax Lien is not more intrusive than necessary.

## Discussion

We may grant summary judgment where there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). We conclude that there is no genuine dispute as to any material fact regarding the issue raised in respondent's motion.

Petitioner does not dispute the existence or the amount of petitioner's unpaid liabilities at issue. Where, as is the case here, the validity of the underlying

**[\*15]** tax liability is not placed at issue, we review the determination of the

Commissioner of Internal Revenue for abuse of discretion. See Sego v.

Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176,

182 (2000).

Petitioner refused to enter into an installment agreement with respondent

because he believed, and still maintains here, that the second settlement officer

incorrectly determined the amount that he would be able to pay each month to the

IRS with respect to the unpaid liabilities at issue.

Section 6159(a) authorizes respondent to enter into an installment

agreement with a taxpayer if "such agreement will facilitate full or partial

collection" of a liability. Installment agreements "must reflect taxpayers' ability to

pay on a monthly basis throughout the duration of agreements." Internal Revenue

Manual (IRM) pt. 5.14.1.4(4) (June 1, 2010).[7] In determining a taxpayer's ability

to pay, a settlement officer must "[a]nalyze the income and expenses to determine

the amount of disposable income (gross income less all allowable expenses)

available to apply to the tax liability." Id. pt. 5.15.1.2(1) (Oct. 2, 2012).

---

[7]All IRM references are to the version of the IRM that was in effect on April 17, 2014, the date on which the second settlement officer had a telephonic hearing with petitioner's representative. Although there were changes to the IRM that became effective after that hearing and before respondent issued the notice of determination to petitioner, none of those changes is applicable here.

**[*16]** IRM pt. 5.15.1.11 (Oct. 2, 2012) states in pertinent part:

5.15.1.11 - Determining Individual Income

(1) Generally all household income will be used to determine the taxpayer's ability to pay. * * *

(2) Income consists of the following:

(a.) Wages. Wages include salary, tips, meal allowance, parking allowance or any other money or compensation received by the taxpayer as an employee for services rendered. This includes the taxpayer and the taxpayer's spouse.

*       *       *       *       *       *       *

(e.) Pensions. Includes Social Security, IRA, profit sharing plans, etc. Pensions could be used as an asset or as part of the income stream. * * *

(f.) Child Support. Include the actual amount received in addition to other debts or bills the non-custodial parent is paying pursuant to a child support order. For example, the court order assigns $200 a week for support but also requires all medical bills to be paid. The child support income would include the $200.00 plus any additive support payments received for medical bills.

(g.) Alimony. Include the assigned payments made by the non-resident spouse. However, consider if other bills are being paid, such as the mortgage, and adjust the allowable expenses accordingly.

(h.) Other. This could include payments from a trust account, royalties, renting a room, gambling winnings, sale of property, rent or oil subsidies, etc. Tax return information could include various sources of income.

[*17] It is petitioner's position that, in proposing an installment agreement under which petitioner would pay $1,750 each month to the IRS with respect to the unpaid liabilities at issue, the second settlement officer erred. That is because, according to petitioner, the second settlement officer included petitioner's monthly veteran disability benefits in determining the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue. In support of his position, petitioner advances two arguments. First, according to petitioner, petitioner's monthly veteran disability benefits "fall squarely within I.R.C. Section 104(a)(4) and as such are properly excluded from any income or ability to pay calculation". Second, according to petitioner, petitioner's monthly veteran disability benefits "qualify as service-connected disability payments under 26 U.S. Code Section 6334(a)(10) and should * * * not be included in any ability to pay calculation."

We reject petitioner's position that, in proposing an installment agreement under which petitioner would pay each month to the IRS $1,750 with respect to the unpaid liabilities at issue, the second settlement officer erred because he included petitioner's monthly veteran disability benefits in determining that petitioner would be able to pay that amount each month. Petitioner's position completely ignores that installment agreements "must reflect taxpayers' ability to

[*18] <u>pay on a monthly basis</u> throughout the duration of agreements", IRM pt. 5.14.1.4(4) (emphasis added), and that petitioner's monthly veteran disability benefits increased his "ability to pay on a monthly basis".

We turn now to petitioner's first argument in support of his position that the second settlement officer erred in including petitioner's monthly veteran disability benefits in determining the amount that he would be able to pay each month to the IRS with respect to the unpaid liabilities at issue. Petitioner's first argument is that petitioner's monthly veteran disability benefits "fall squarely within I.R.C. Section 104(a)(4) and as such are properly excluded from any income or ability to pay calculation." Respondent concedes solely for purposes of respondent's motion that petitioner's monthly veteran disability benefits are excludible from gross income and exempt from tax. Respondent maintains that petitioner's monthly veteran disability benefits are nonetheless properly included in determining the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue. Petitioner counters that the Internal Revenue Manual and Form 433-A use the label "income" to refer to various receipts that are required to be included in determining the amount that a taxpayer would be able to pay each month to the IRS with respect to an unpaid tax liability.

[*19] We understand, and are sympathetic to, the confusion that has resulted from the use of the label "income" in the Internal Revenue Manual and Form 433-A. However unfortunate the use of that label may be, it does not require us to conclude that it was an abuse of discretion for the second settlement officer to have included petitioner's monthly veteran disability benefits in determining the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue. Indeed, the Internal Revenue Manual identifies certain payments that a taxpayer receives which are required to be included in determining the amount that a taxpayer would be able to pay each month to the IRS with respect to an unpaid tax liability, even though those payments are excludible from gross income. By way of illustration, IRM pt. 5.15.1.11(2)(f) requires certain child support payments that a taxpayer receives to be included in determining the amount that a taxpayer would be able to pay each month to the IRS with respect to an unpaid tax liability, even though the taxpayer may exclude from gross income under section 71(c) child support payments described in that section.

We point out that, consistent with the requirement in the Internal Revenue Manual that amounts which a taxpayer receives and which are not includible in gross income be nonetheless included in determining the amount that a taxpayer

[*20] would be able to pay each month to the IRS with respect to an unpaid tax liability, the Internal Revenue Manual requires certain personal expenditures to be included in that determination, even though those personal expenditures are not deductible for tax purposes. Indeed, petitioner reflected in petitioner's financial statement, and the second settlement officer allowed, certain nondeductible monthly expenditures of petitioner (e.g., "Trash Service", "Phone", and "Cable") to be included in determining the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue.[8]

We turn now to petitioner's second argument in support of his position that the second settlement officer erred in including petitioner's monthly veteran disability benefits in determining the amount that he was able to pay each month to the IRS with respect to the unpaid liabilities at issue. Petitioner's second argument is that petitioner's monthly veteran disability benefits "qualify as service-connected disability payments under 26 U.S. Code Section 6334(a)(10) and should * * * not be included in any ability to pay calculation." We recently

---

[8]Petitioner offers no explanation for the inconsistency in his position regarding the determination of the amount that he would be able to pay each month to the IRS with respect to the unpaid liabilities at issue between his proposed treatment of certain amounts that he received which are excludible from gross income and his treatment of certain amounts that he paid which are not deductible for tax purposes.

[*21] held in <u>Ligman v. Commissioner</u>, T.C. Memo. 2015-79, at *10, that it was not an abuse of discretion where a settlement officer included certain Railroad Retirement Board benefits that the taxpayer involved there had received in determining the amount that the taxpayer would be able to pay each month to the IRS with respect to an unpaid tax liability, even though those benefits were in part not subject to levy under sections 6334(a)(6) and 6331(h).

On the record before us, we find that the second settlement officer did not abuse his discretion in including petitioner's monthly veteran disability benefits in determining the amount that petitioner would be able to pay each month to the IRS with respect to the unpaid liabilities at issue.

We have considered all of the arguments and contentions of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's motion and decision for respondent will be entered</u>.